As director of the Appellate Litigation Clinic at the University of Virginia School of Law, I'd like to introduce to the court this morning two third-year law students, Laura Cooley and Tanner Russo, who argued before the panel and who have our client's permission to argue this remarkable proceeding today. Thank you. Thank you very much. With that introduction, Ms. Cooley. Good morning, your honors, and may it please the court. My name is Laura Cooley and I'm here on behalf of the petitioners. If I may, I'd like to reserve five minutes for rebuttal, which my co-counselor Tanner Russo will handle. Granted. This court has asked us whether the Third Circuit retains certiorari jurisdiction only over cases commenced in the Third Circuit before the enactment of H.R. 6116, or whether this court also retains jurisdiction over cases filed in the Virgin Islands Superior Court before the enactment of H.R. 6116. For three reasons, it is clear that Congress intended the latter. First, the plain language meaning of the phrase, cases commenced, is filed in the Virgin Islands Superior Court. Second, comparison to analogous legislation shows that Congress knows very well how to write a provision exempting only the cases pending in the court divested of jurisdiction from a jurisdiction-shifting statute, but they did not do so here. Third, defining cases commenced as the respondent contends the slap requires leads to absurd results contrary to Congress's intent in passing H.R. 6116. The appropriate starting place for interpreting this statute is the plain language. Case is broadly defined as a proceeding in court, a suit, or an action. Although an appeal may be considered a distinct step in a case, it is still part of the case as a whole. Commenced is defined as filed in a court of competent jurisdiction. In the Virgin Islands, the first court of competent jurisdiction in which a case is filed is the Virgin Islands Superior Court. Defining cases commenced, on the other hand, as appellate cases commenced, as the respondent contends that slap requires, has odd and absurd results contrary to Congress's intent in passing H.R. 6116. The text of Section 3 of H.R. 6116 says that the amendments made by this Act apply to cases commenced after the enactment of the Act on December 28, 2012. But the respondent focuses solely on what the amendments do not apply to, and therefore argues that the amendments do not apply to appellate cases commenced before December 28, 2012. What the respondent fails to consider is the effect of defining cases commenced as appellate cases commenced on the text of the provision itself. Under this definition, the amendments, shifting jurisdiction from the Third Circuit to the United States Supreme Court, only apply to appellate cases commenced on or after December 28, 2012. This reveals a shortcoming of slap. Because it is not clear whether the appellate case commenced is the filing of a writ of certiorari with the Third Circuit or the filing of a writ with the United States Supreme Court. Both are unworkable and produce odd results contrary to Congress's intent. If the relevant appellate case is the filing of a writ with the Third Circuit, then the amendments only apply and give the U.S. Supreme Court jurisdiction if an appellant first erroneously files a writ of certiorari with the Third Circuit. If, on the other hand, the relevant appellate case commenced is the filing of a writ of certiorari with the United States Supreme Court, then the appellant will have a choice of forum between the Third Circuit and the United States Supreme Court. Because if an appellant chooses to file their writ with the Third Circuit, then the amendments never apply and jurisdiction is never shifted. In either case, the result is contrary to the will of Congress. The parties agree that the ultimate goal of H.R. 6116 was to make the Virgin Islands Supreme Court just like every other state high court. But appellants from all other state high courts may go directly to the United States Supreme Court. None are first required to erroneously file in a federal court of appeals, nor do they have any choice of forum. This Court should reject such an odd construction of the statute, especially because an alternative, consistent with plain language and legislative intent, is available. Under our definition, the amendments apply to cases commenced in the Virgin Islands Superior Court on or after December 28, 2012. This means that the amendments do not apply to cases commenced in the Virgin Islands Superior Court before December 28, 2012. Thus, this Court retains certiorari jurisdiction over them, including this one, until January 29, 2022. Analogous legislation shows that Congress intended this definition rather than the one advanced by the respondent. Congress knows very well how to write a statute that unambiguously does what the respondent claims that this statute does. They have done so at least four times. In these acts, Congress uses specific language to exempt pending cases from the court that is divested of jurisdiction. But here, Congress stated what cases the amendments apply to rather than what cases are exempt from them. And they use the broad general phrase, cases commenced, rather than, for example, actions pending in the Third Circuit on the date of enactment. It is therefore clear that Congress intended H.R. 6116 to have a different meaning than these analogous statutes. Therefore, Your Honors, defining cases commenced as commenced in the Virgin Islands Superior Court is consistent with the plain language, consistent with congressional intent, and does not lead to any odd results. Furthermore, Your Honors, SLAC is distinguishable from this context because it is a unique statutory scheme. The United States Supreme Court, this circuit, and other circuits have all stated that such decisions are context-specific. Before we discuss SLAC any further, let's start out by dealing with the implications of BASIN if this court continues to adhere to it. It would seem to me, based upon some experience with the Virgin Islands and some knowledge of its territorial courts, that were we to adhere to BASIN, we may have at least another seven to ten years, which would amount to a dozen years or more after the passage of H.R. 6116's enactment. Can you provide me with any reason why Congress would have wanted this court to continue hearing cases from the Supreme Court of the Virgin Islands for so many years after the enactment of H.R. 6116? Your Honor, this court's jurisdiction would not continue for an additional seven to ten years. It would automatically cease on January 29, 2022. That is because... The full 15 years that Congress envisions? Yes, Your Honor. That is because the amendments strike all of the language of Section 1613 All right, let's work with that date then. Congress still structured the review of the performance of the court with five-year increments, did it not? Yes, Your Honor. All right, and H.R. 6116 followed that earlier legislative enactment, right? Yes, Your Honor.  Yes, Your Honor. Does it make sense to you that Congress would have, in the face of the report from the Judicial Council of this circuit, decide to allow this to continue for that full 15 years, notwithstanding the fact that they wanted performance of the Supreme Court reviewed at those five-year increments? The circuit's jurisdiction is continued for an additional, the full 15 years, but it is to a limited extent. It is only for those cases that were filed in the Superior Court before December 28, 2012. And furthermore, the existence of the continued reporting requirement, if that's what I understand Your Honor to be asking, doesn't... Not reporting, the review that is to be, that was to be conducted by this court after the first five years, and subsequently if Congress didn't act based upon a recommendation after the first five years. Yes, Your Honor. There is a reason that Congress might have wanted to continue it. As we pointed out in our brief, this circuit has a much higher grant rate for writs of certiorari than the United States Supreme Court. And litigants who filed before the enactment of H.R. 6116 expected that they would be able to have a chance to file writs of certiorari with this court. But whether or not Congress had a reason to preserve this... In beginning that statement with whether or not, since we're dealing with the term cases commenced, is that term ambiguous? No, Your Honor, we don't take the position that it's ambiguous. Well, you don't think it's ambiguous, and yet you reject slack as providing us with some sound... Granted, I will grant you that it's not binding, but you don't believe that it is some kind of bellwether for us as to where we ought to go with the term cases commenced when we're dealing with a statute that is directed to an appellate court and the appellate structure of the BIA court system? Although slack is not binding, it could be persuasive, except for the fact that when you insert the definition of cases commenced from slack into the statute written by Congress, it leads to these results wherein you either have an erroneous filing requirement for litigants in order to shift jurisdiction from the Third Circuit to the Supreme Court, or you create a choice of forum for litigants. And that is contrary to Congress's intent, because in either case, you're treating litigants coming from the Virgin Islands Supreme Court differently than litigants coming from any other state high court. And so creating that sort of provision would not have been Congress's intent if they truly wanted to make litigants from the Virgin Islands Supreme Court co-equal with litigants from every other state Supreme Court. You realize, I know, that our review of decisions from the Supreme Court is a bit unusual, or at least we would say it differs from review by the Supreme Court of the United States, because we are still called upon, if our socio-jurisdiction is implicated, to rule not only on questions of federal law but also questions of territorial law, right? Yes, Your Honor. Don't you think it is an anomalous result for us to be going forward and resolving questions of territorial law while at the same time the Supreme Court of the Virgin Islands is resolving those questions as well? It's the highest court of that territorial system. It's slightly unusual in that no other state high court has that kind of system, but it doesn't create any sort of confusion as the Respondent contends. If you factored the turtle into your answer, don't you have confusion? Because we have said that the Supreme Court of the Virgin Islands is not bound by our pre-2007, they're not bound by our rulings of territorial law prior to 2007. So there you have a situation where you've got two different bodies of adjudication on the same principle of local law, based upon whether or not it came before 2007 and is found by the V.I. Supreme Court or subsequent to that in our rulings control. Does that make any sense at all? It should be clear to judges in the Virgin Islands which line of case law they are supposed to follow. For cases that were filed... In Traverse, I think it was, they basically only ruled... Yes, Your Honor, for cases that are brought after December 20, 2012, which would no longer be subject to the jurisdiction of the Third Circuit, the Virgin Islands Supreme Court is not bound to follow this court's decisions on local law. But for cases filed before December 20, 2012, they would simply follow the Third Circuit's jurisdiction because those cases, the court to which they would appeal ultimately is the Third Circuit. Why would they follow our jurisdiction? Why isn't it perfectly conceivable, in fact likely, that you'll have cases with similar or the same issue proceeding, one that happened to come before that date, one that happened to come after, and litigants aren't going to know what they're going to get? Or if they end up in front of us, according to the position you're taking, it can be an outcome that is at odds with what's happening under the binding authority of the Virgin Islands Supreme Court. How can that be right? And if I might amend that, not only litigants, but the territorial courts, the superior courts, may be similarly confused. That could be a result of defining the statute in the way that we would like to define it, Your Honor. But in order to have the statute mean what the respondent would like it to mean, the statute would have to be rewritten. In order for the statute to only save the cases that were pending in the Third Circuit before the enactment of H.R. 6116 and not have any of these additional effects that we have pointed out of creating an erroneous filing requirement or a choice of forum, the statute would have to be rewritten. But the question is, what is a case? Yeah, why isn't SLAC sufficient to resolve that problem? Exactly. SLAC says cases means appellate cases. If cases means appellate cases, where's the problem? Because when you put that into the text of the provision, Your Honor, what the amendment says is these amendments apply. These amendments, which shift jurisdiction from the Third Circuit to the U.S. Supreme Court, apply to appellate cases commenced on or after the date of the enactment. If they don't apply, if jurisdiction is not actually shifted until the appellate case is filed, you have to define filed in which court, especially because SLAC doesn't stop at saying that the relevant case commences the appellate one. They say specifically what is required to commence the appellate case. In SLAC, they said it was the filing of a certificate of appealability. In this case, it would be the filing of a writ of certiorari. So if jurisdiction is not actually shifted until a writ of certiorari is filed, you have to say where that writ of certiorari needs to be filed. If it's filed in the Third Circuit, then the amendments only apply and shift jurisdiction from the Third Circuit to the U.S. Supreme Court if you first erroneously filed in the Third Circuit, at which point jurisdiction would be lost. The Third Circuit would dismiss the case as lacking jurisdiction, and then you could refile in the U.S. Supreme Court. The alternative and more likely definition would be filing a writ of certiorari in the U.S. Supreme Court. But then for cases such as this one, which have never filed a writ of certiorari in the U.S. Supreme Court, the amendments don't apply to those cases, and jurisdiction is never shifted. They don't apply, or as a fair reading of the statute, one that simply says if it in the ordinary course would be filed in the U.S. Supreme Court because of the time deadline that's given, that's how it's to function. And if it's not going to function on that timeline, it's going to be a circumstance where, by the way you've described it, somebody would know, would be able to read the statute and say, I'm in the wrong court, as you just said, I'm in the wrong court. I mean, I'm having a little trouble understanding what seems to be a very technical reading that you're giving to this statute as creating some confusion. If people have a hard deadline and they know that's the deadline, they know, okay, I'm supposed to go to the Virgin Islands Supreme Court and then to the U.S. Supreme Court because I'm after the deadline. Where's the confusion? How does that create confusion? Because the statute, Your Honor, doesn't say cases that will be commenced, Your Honor, after December 28th went to office. It says cases commenced, which means cases that are filed. So it comes down to your reading that this is an absurd result or it comes down to the assertion that cases commenced can only mean a case that it's actually the subject of a filing. The only kind of commencement is theft filing, right? Yes, Your Honor. Okay. You only announced the Supreme Court of the Virgin Islands to the Supreme Court of state courts and you said the Congress would basically want to treat the Supreme Court of the Virgin Islands the same way as it would state courts. But we all realize there's a very big difference here. So why wouldn't you now say not only state supreme courts but other territorial supreme courts? And if that's the case, why would Congress want to treat the Virgin Islands Supreme Court jurisdiction and the divestment of it different, the divestment of our jurisdiction over their appeals, why would that be treated differently than Congress treated either Guam or Puerto Rico? And there's some technical language which varies a little bit between the First Circuit and the Ninth Circuit with Puerto Rico and Guam. But given slack, what difference does it make? Or the Northern Virgin Islands. All three. Well, Your Honor, in terms of Congress wanting to treat the Virgin Islands just like every other state high court, it is clear that they wanted, after H.R. 6116 became fully effective, for the Virgin Islands Supreme Court to be identical to state high courts. And that is because they created Because now you're saying once it became effective, and we're here trying to figure out what does that mean? What does this case convince me? So let's go back before that step. And I think we all agree that there's a really big conceptual difference between a territorial supreme court and a state supreme court in terms of how it was created, number one, how the certiorari jurisdiction of the supreme court is laid out. And what I'm trying to get to do is focus not on state supreme courts but on territorial supreme courts and add to that what our chief said about the Northern Mariana Supreme Courts. And if you take those three territories together, all of which I think we agree, the certiorari appeal to the supreme court occurs based upon when it's filed in the appellate court, not in the court of original jurisdiction, which in the Virgin Islands would be the supreme court. Why wouldn't the V.I. Supreme Court be the same as those other supreme courts? Well, Your Honor, the answer is that Congress is exactly that. Congress did something different in this statute. And all of those... That doesn't answer the question. Of course they did something different. What obviously Judge McKee is pursuing and what interests me as well is since they treated it differently, why? What is there in the language of the statute or in any legislative history that would suggest that the Supreme Court of the Virgin Islands should be treated differently in terms of when certiorari to a court of appeals from a supreme court ought to end and certiorari to the Supreme Court of the United States begin? Well, Your Honor, they didn't actually treat the timing of the certiorari jurisdiction for those courts identically. For Guam in the Ninth Circuit, since they did not have any sort of savings clause or effective date provision, certiorari shifted immediately, even for cases that were pending and had been argued. The effect is that the Virgin, and I don't want to use the word punitive, but the Virgin Islands Supreme Court is, by implication, being treated differently. Differently than Guam and also differently than the First Circuit. So why? But the First Circuit was treated differently than— Puerto Rico was treated differently than Guam, Your Honor, because in Puerto Rico they saved cases that were pending in the First Circuit, but they did so by using precise language. So Congress has treated Guam, Puerto Rico, and the Virgin Islands all differently, and unfortunately there is nothing in the statute with regards to the effective date provision to suggest why they might have wanted to do that. What we have in the way of legislative history with respect to 6116 and the second part of that question, should the report of the Judicial Council that was transmitted to Congress be treated as we would treat in the course of our consideration legislative history? Your Honor, in terms of the legislative history that we have available, the only thing that's available to us is two floor statements made by two different Congress people. Congressman Scott was one of them, I believe. Yes, and Congresswoman Christensen, I believe. Yes. Chief Delegate Christensen, yes, was the main proponent. Yes, Your Honor. Both of them, the only statement they made with regards to the intent of the statute was that the ultimate purpose of the statute was to make the Virgin Islands Supreme Court identical to every other state and territorial high court. Neither of them said anything as to the timing of when that was to take place. And for that matter, Your Honor, I don't believe that the Third Circuit's report to Congress said that it was supposed to be immediate either. But didn't the report make the point and make it pretty forcefully that the Supreme Court of the Virgin Islands had reached a point in its development that it did not need the Intermediate Court of Appeals, our court, to do anything supervisory? That was the impetus for the legislation, was it not? Yes, Your Honor. Doesn't that mean something about the purpose that Congress had in mind when it passed the statute that we, in effect, urged them to pass? They don't need us anymore. Congress passes the statute. Why would we interpret their statute to mean they don't need us anymore except for another 15 years? It's not except for another 15 years because the provision, even though it preserved this court's jurisdiction for cases filed in the Virgin Islands Superior Court before December 20, 2012, it still removed that 15-year jurisdiction for cases filed after, which would have existed before H.R. 616. The overhang. How is it consistent with what the Judicial Council report said to Congress, upon which Congress immediately acted for there to be this overhang of years and years and years, this tale of jurisdiction that stretches out? It's consistent, Your Honor, because it's not uncommon for Congress to preserve jurisdiction for some time after the jurisdiction-shifting provision is passed. They did so when they gave the First Circuit jurisdiction over Puerto Rico. They did so when they took it away from the First Circuit. We're looking to whether that's a short time or a long time. And where our report and recommendation said this Court is ready now to assume the role of the State Supreme Court and for the U.S. Supreme Court to step into the role of cert petitions, then why in Congress appears to have accepted that recommendation by proceeding with the enactment, why wouldn't we interpret that to, if not immediate, given the language, to be the shorter time rather than the longer when Slack seems to tell us at least there's some ambiguity with the thesis commenced concept? Two things, Your Honor. First, although Congress did have the report before them that this Court was ready to be divested of jurisdiction over the Third Circuit, we still don't know what their reaction to that report was in terms of how immediate they want it. They passed the legislation. They passed 6116. And as we said earlier, that legislation dealt with the use of the floor of Congress. Believe me, this Court put that legislation there. They passed the legislation based upon the report of the Court. And you're saying that we don't know what Congress's reception to our report was? We know that Congress- How often does Congress act with such speed? I don't know the exact answer to my question, Your Honor. We know that Congress had the report before them, but we also know that they included in H.R. 6116 this effective date provision, which is different than the effective date provisions that they put in other jurisdiction stripping statutes. And that says something. In addition to that- Doesn't it also, I mean, doesn't it say something that in 1984, when Congress was creating the IAPL authority and other things, it used the words complaint, and here it didn't use the word complaint? I mean, doesn't that tell us something, that Congress made a decision to use cases commenced in the context of the appellate court's out-of-courts continuing role, when in the past it used the word complaint? In the past, it doesn't always use the word complaint. Congress has used the phrase cases commenced in a number of- I'm talking about in connection with the Virgin Islands. In 1984, when it created some of the territorial courts authority, it used the word complaint and talked about it in the context of not divesting complaints that were pending in the district of the Virgin Islands. So shouldn't we take something from that that Congress, in the context of the authority of the single unitary court system, uses the word complaint when it means to, and it uses the word cases commenced in the context of whatever subject it's addressing and in our situation to serve authority? That might be true, Your Honor, except for what happens, as I pointed out, when you define cases commenced to mean appellate cases commenced. It has results that Congress could not have intended given their purpose. And additionally, as the respondent points out, if you construe this as a savings clause, savings clauses can't create anything that didn't exist before. So if you construe this clause as appellate cases commenced, it creates a choice of form. So it is creating something that did not exist before. Thank you very much, Ms. Cooley. And we'll hear from Mr. Russo on rebuttal. Ms. Lawrence? Good morning, Your Honor. Chief Judge Ray Lawrence on behalf of the respondents. The VI Bar Association has been given ten minutes of my time. They've also requested two minutes of my five minutes, if you can accommodate that. That's acceptable to me, Your Honor. So I'm not good at math. Does that mean they get two minutes? They get two minutes of my uninterrupted time I'm sharing today. Very well. This case presented, for me at least, a great opportunity to do a sort of multiple-choice question in determining, you know, when Congress used the terms cases commenced, cases commenced where? A being the United States Supreme Court, B being the Third Circuit Court of Appeals, as proposed by the petitioners, and C being the trial court. I went through a process of elimination in this regard in preparing for arguments. And for me, the first I was able to eliminate was that cases commenced could possibly mean cases commenced in the Third Circuit. Because, as you know, the whole point of H.R. 6116 was to remove that certiorari jurisdiction from the Third Circuit. So there would be no reason for there to have been any cases commenced in the Third Circuit after December 28, 2012. So that was immediately eliminated from my mind. The second one that was also eliminated was that cases commenced could possibly mean cases commenced in the trial court. And that's because, as the questions from this panel has revealed, it would violate the legislative history, the whole point of that act being passed. And it would lead to patently, in our mind, patently absurd results. Primary being the fact that the VA Supreme Court in this very case could, in a post-2012 trial court case, determine that the statute is unconstitutional if this court were to reverse in this case. And the fact that the Supreme Court could have that ability to do that, because, of course, they are not bound by this court on matters of territorial law. They are also not bound by this court on matters of federal law. They are bound by the U.S. Supreme Court. And the fact that they could do that, and we could have this court and the VA Supreme Court issuing contrary opinions in the very same case, to me, that reigns supreme as why the interpretation proposed by the petitioners is incorrect. And Representative Scott, I believe, was the one in the legislative transcript that we reviewed, made note that they were making certain changes to the fact that the certiorari review is now being made to the U.S. Supreme Court in order to give notice to litigants of where they have to file. So the whole language of striking that section of the U.S. Supreme Court review code that now included the Virgin Islands, that was done so litigants would know, please don't file your cases in the Third Circuit anymore. You need to file your cases in the U.S. Supreme Court. Thank you, Ms. Lawrence. And through your generosity, we'll now hear from Mr. Arce. Thank you, Your Honors. May it please the Court, I'm Dwight Arce, appearing on behalf of the Virgin Islands Bar Association. Our association has appeared as amicus in this case and in every other certiorari proceeding pending in this court now to argue that this court, to urge this court to recognize that it no longer has jurisdiction to issue a writ of certiorari to the Virgin Islands Supreme Court. The Bar Association has pursued this issue as part of its mission to advance the administration of justice and advocate public policy positions for the benefit of the Virgin Islands courts and the people that those courts serve. This court's continued exercise of jurisdiction over the Virgin Islands Supreme Court is detrimental to the administration of justice for all the reasons this court has already mentioned. It creates greater opportunities for conflict between federal courts and the territorial courts and puts in doubt the most fundamental aspect of American legal practice, the operation of certiorari decisis. Unlike every other American jurisdiction, under the petitioner's interpretation of cases commenced, reading the district, the Direct Review Act, under the petitioner's reading of the Direct Review Act, the determination of which court is ultimately the final arbiter is case-specific and will remain so indefinitely. This has already caused a great deal of confusion in Virgin Islands courts with some Superior Court judges characterizing this court as the court of last resort for the Virgin Islands and choosing to apply this court's interpretations of Virgin Islands law over that of the Virgin Islands Supreme Court. Regardless of which sentence of statutory interpretation this court decides to apply to the term cases commenced, the result is the same. That cases commenced refers to cases commenced for direct review of the Virgin Islands Supreme Court. There is no choice of forum issue that arises from that interpretation. Cases commenced for direct review after December 28, 2012 should be commenced in the U.S. Supreme Court. The statute is very clear. An important point about that is that the cases commenced language applies not only to the repeal of this court's jurisdiction but the grant of the jurisdiction to the U.S. Supreme Court. So the U.S. Supreme Court has no certiorari jurisdiction under the petitioner's reading for any case filed with the Virgin Islands Court before December 28, 2012. This is an absurd result, Your Honors. Thank you. Thank you very much, Mr. Arce. Of course, we'll have you back now, Ms. Lawrence. Ms. Lawrence, we have heard from the other side about the statutory issue here and what cases commenced means, and we'll hear more, I'm sure, from you and Mr. Arce about that. One thing we did not hear from the other side up to this point, and I'd like to inquire of you, is the judicial policy aspect of this case. I was rather struck by a characterization that appeared in one of the amicus, the amicus filed on behalf of Companion Assurance Company, and there's a section in that brief that is titled The Apocryphal Backlog in the Superior Court, which included a sentence, No evidence was cited to support such claims, and the available data suggests that the claims are simply island legend. You want to talk to that term, island legend, rather than my talk about my experience there, which pales in insignificance against your own, just what the backlog situation is. In our office, I counted at least five cases that were pending from 1997. That's two years after I graduated from high school. So, the backlog is real, it's not island legend. The numbers that the amicus set forth demonstrates that they exist. His own numbers actually make a pretty strong case for a rather huge backlog. That's exactly correct. And that's why we didn't object to them filing the amicus, because we realized that there is indeed a backlog that would have this court retaining certiorari jurisdiction long after the maximum contemplated time frame of 2022. And this case was filed 17 years ago? Yeah, it's old. A lot of the cases are old. Rennie versus Artie Hazel. No, he's old. So is the key, I guess. For cheese and wine. There's Rennie, a case that we have that's pending 1997. We have several cases that I'm on that are very, very old. And it seems to me that it makes no sense. So, do you disagree that no matter what, we decide here that our jurisdiction, our cert jurisdiction, would end in 2022? You think it would extend beyond 2022? It has to, because that language, that 2022 language, has been repealed. So, because it has been repealed, you can no longer rely on that date as a time frame for your jurisdiction to end. That, to me, also lends to the conclusion that the interpretation that is submitted by the petitioners just makes no sense. You're now relying on language that has been repealed since 2012. Ms. Lawrence, we don't lightly reverse our own precedent. And that's not only as a matter of the integrity of the institution of the judiciary, but also because we appreciate that litigants rely on our precedent as controlling. What do we do with the fact here that if we were to agree with you and if we were prepared to overrule Basin, that would seem to mean that those who currently have filed cert petitions with us, where those have been granted, would now have no recourse whatsoever to either court. Doesn't that present a stark due process problem if we take that approach? And is there some resolution to that? For example, applying such a ruling prospectively? Could we even do that where the issue before us is one of our own jurisdictions? I don't believe you can. We're interpreting a statute that was passed in 2012. So to the extent you interpret the statute as having divested this court of jurisdiction, it's clear, therefore, that this particular case should have been dismissed for lack of jurisdiction. But I believe that that Limtiaco, I can never pronounce it correctly, Limtiaco v. Camacho case that we cited solves that problem. Because with Guam, the exact same thing occurred. And there the U.S. Supreme Court determined that their 90-day time frame was told while Guam sorted out whether or not they believed they retained jurisdiction. I don't believe that the petitioners or any other litigants who have relied on Basin could be penalized by the U.S. Supreme Court in that matter. There would be a tolling of that time frame consistent with the precedent set forth in the Limtiaco v. Camacho case. Ms. Lawrence, even if you're correct about your case in Limtiaco, that doesn't help Companion Assurance Company, which says in its brief that it decided to file and take this issue up on an issue on which the Supreme Court is going to have no jurisdiction. So there are some litigants out there who've been relying on the understanding based on Basin that they would have review here, and yet there's no way that Companion Assurance will have any further jurisdiction or review, which is a different expectation from what they went into the litigation in. How would you respond to the brief? Well, I disagree that they will not have an opportunity for review. They can file their petition with the U.S. Supreme Court once this court dismisses it for lack of jurisdiction. This court has accepted it. But their allegation is that they have a right to review of an issue of territorial law now. If you prevail, then they have no ability to seek review in the U.S. Supreme Court on an issue of territorial law. This is retroactively stripping jurisdiction over those issues that you're proposing. Well, I don't believe that any litigant, including Companion, another case that I'm on, can reasonably say that in light of the fact that this issue has been pending for a while. This jurisdictional has been pending since Basin was issued. The FBI Bar Association has filed in every single case putting litigants on notice that this jurisdictional issue is one that's not necessarily settled because we believe that it was wrongly decided. So they're not allowed to rely upon our precedent? If they did, Your Honor, I don't believe it was reasonable because the jurisdictional issue was always, in my mind, and we've raised it every time we have been on the opposing side of a petition that was filed, we believe that it was clear for us misreading of that statute that should have been looked at en banc. We've been arguing this for years, at least from our office, and I know that the FBI Bar Association has as well. I don't believe it was reasonable for them to think that they have a right to review of territorial law in that particular instance. Why is Basin wrong, though? Take it on its merits. The court engaged in a lengthy analysis, and it came out to a conclusion different than the one you're pressing. On the merits of its analysis, why was the court wrong in Basin? For a couple reasons. First, I don't believe that the Basin panel properly looked at Slack v. McDaniel and the clear language in Slack that when cases commence is used for appellate review, it means cases commenced. When cases commence is directed to appellate statutes, it means cases commenced in the court of appeals. They kind of brushed over it, and the petitioners themselves have tried to distinguish Slack, but it's indistinguishable. For me, I think it is controlling in that respect. They say, if I understand the argument correctly, EDPA is a peculiar statute. It's a habeas statute. It doesn't have anything to do with changing jurisdiction in territorial courts. Let's look at the statutes that address that particular issue. It is changing certiorari jurisdiction in territorial courts. And then the court in Basin walked through an analysis of those various statutes. What is it about that analysis that leaves you persuaded that it was wrong and should persuade us to overturn our existing jurisdictional ruling? Because the lack of emphasis on the legislative history. That case is not very deep on the whole purpose of the statute. And the absurd results, which is what we have emphasized, the absurd results that would follow with interpretation, specifically that the VA Supreme Court would be able to issue a contrary opinion in a post-2012 case that would conflict with any decisions of this court. And those two pieces are critical to the analysis. I don't believe Basin panel appreciated. And that's why, despite the extensive analysis, and then the reliance on that Hamden case, I believe was also misplaced because SLAC was more on point. SLAC did not limit its holding to habeas cases. It didn't qualify that, you know, this is only with regard to habeas cases that we interpret cases commenced. It was a general pronouncement of law. Yes, it's contained within a habeas case, but it still nevertheless was a general pronouncement of law that would guide this court in its determination of what that case has commenced means. And I don't believe Basin fully digested the legislative history, the absurdity of the results in the conflict of the courts, and that is where its analysis failed. Should we be putting any weight at all on the fact that this court in Basin didn't need to address the jurisdictional issue because it could have simply said the case is moot. The petitioner in that case had, you know, there was some question about, hey, the person who brought the suit is dead. The case, you can say it's moot. And yet we went ahead and engaged in the analysis. It was clear that it seemed like it was something important to that panel to go ahead and decide. Does that have any bearing on the weight we should give Basin one way or another? I don't believe so, Your Honor, and I believe the procedure of this case is a petition for initial hearing. So I don't believe that this court should afford that Basin opinion any weight at all. It should look at the issue unevenly. Yeah, that's not really what you're being asked, though. You're being asked basically a thing, and I don't want to incorrectly reword it, so let me know if I'm incorrect. If the plaintiff was dead, unless there's something to save the case from being moot, if it's moot, there's no case for controversy under Article III. If there's no case for controversy under Article III, there's no jurisdiction to get to the issue of social jurisdiction to begin with. So given that, should we factor that into our analysis in terms of how we look at Basin? You're shaking your head no, and I'm hoping you'll go, yes. Well, that's why I was shaking them to then say, yes, I agree. I love that same mustard you're taking. I agree. I do agree with you. We pressed that issue in our briefing before the original panel, that the mootness of the case in and of itself rendered Basin of no potential value because it violated the fundamental premise that you have to have Article III jurisdiction before engaging in such a serious pronouncement of law. In fact, I think early on we discussed U.S. Steel in connection with that, where the Supreme Court's decision in U.S. Steel. Exactly, and I believe that we encouraged the panel that was in St. Croix in December to completely set aside Basin and decide the issue without giving it any weight. So I don't believe Basin has any bearing on this court's announcement at all because of the mootness. Just earlier, the Chief asked your friend on the other side of the aisle, the courtroom, about whether or not the Judicial Council's report should be included within the concept of legislative history, which is not normally done, but does seem to be given the command of Congress to move on these five-year interim reports, that what an interim report pursuant to an act of Congress specifies could be considered, maybe should be considered, as part of the legislative history. Why don't you get your response to that, and then hopefully Mr. Nusselt can also respond to that. I think the court must consider it because the speakers on the floor, they mentioned it over and over again, that this is simply us, Congress attempting to put into law the report of the Judicial Council. So I don't see how you can divest the two where Congress specifically relied on it in forming this legislation. I read the report. It was a glowing review. And so for me, it just defied logic that they would pass a statute that would extend your review past the five-year increment and past the 2022 year where the review was, man, if I had that kind of review, I'd be in good shape. It's an excellent, excellent review. I see my time is almost up. If there's any more, any further questions? No, thank you very much, Ms. Lawrence. And when I said U.S. Steel, I meant Steel Company. My mistake. You were thinking of Pittsburgh. Thank you, Your Honors. May it please the Court, I'm Eric Senegan on behalf of the Virgin Islands Bar Association. The statute at issue here, cases commenced language, is unambiguous. This Court can resolve this issue on a plain language interpretation. Why don't you immediately engage with Ms. Kuh's argument that cases commenced can't mean what you're saying it means because it commenced has got to mean the filing of something. If that's what it means, you end up with an absurd result. Let's go ahead and take that on directly, if you would. Sure, Your Honor. Commenced does mean the filing of something. I mean, and the case that's commenced that we're speaking about in terms of the savings clause in the Direct Review Act is the case commenced with the Third Circuit seeking Direct Review or the case commenced with the U.S. Supreme Court seeking Direct Review. The choice of forum issue that's been presented by the petitioners, I'm not, honestly, I'm not entirely sure that I understand it. The statute provides that the amendments made by this Act will apply to cases commenced after the effective date, December 28, 2012. The Act does exactly two things. It repeals this court's jurisdiction and grants jurisdiction to the U.S. Supreme Court. So if we interpret cases commenced to mean cases commenced for direct review, as the statute actually says in its title and its purpose, then there is no ambiguity about which court you go to. When you're seeking direct review of the Virgin Islands Supreme Court, you go to the U.S. Supreme Court. In fact, it does talk about an appeal being a continuation. Even though it's a continuation, it's a distinct step looked at separately in the language in the stack. On page 44 of the U.S. Supreme Court, I don't know how it could be any clearer. It's true it's an immediate statute and they were looking at it. But as was said by Ms. Lawrence, they didn't qualify it in any way. Absolutely, Your Honor, and we agree. Additionally, this instance is even a stronger instance for viewing these proceedings as separate from the underlying proceedings. So SLAC is talking specifically about appeals. We are not talking about appeals here. We're talking about writs of certiorari. That is a distinct procedural mechanism for review at common law and under federal statute. An appeal is an appeal as of right. So you file a notice of appeal and the higher court must hear the case. A writ of certiorari, as you know, is going to a higher court asking that court to issue a writ to the lower court to review its decision. So when Congress uses the term cases commenced in the context of a certiorari statute directed at direct review of the Virgin Islands Supreme Court, it's clear that the only case it could have been talking about is the type of case that the statute addresses. Counselor, I'm concerned because the rules of appellate procedure repeatedly refer to an appeal in a case. The Class Action Fairness Act has an analogous. There's a state complaint and then a federal one. Supreme Court's own rules refer to certiorari in cases, and you're going to sever them. So this may only affect a few cases in the Virgin Islands, but your reasoning might disrupt the ways in which we compute time in a lot of appeals, and Congress has ratified these rules of appellate procedure. So give me some comfort that this is not going to be a ruling that upends the way that the rules of appellate procedure are worded and operate when they distinguish an appeal in a case repeatedly. Absolutely, Your Honor. And what I hope will give you comfort is the fact that context matters. When you're conducting a plain language review, as this court has said many times in the past, you have to look at the context the statute appears in. So what the basis panel did and what the petitioners are arguing that you should do is take the word case out of the context of the statute, look it up in the dictionary, and apply the first definition you see. That's not how a plain language interpretation works, according to this court's own precedent. You must look at the context in which it appears. The context here is very clear and very different from other circumstances. So when you have a statute that addresses exactly one issue, which court has jurisdiction to directly review the Virgin Islands Supreme Court, then the case they're talking about in that context is very clear. They're talking about a case seeking direct review of the Virgin Islands Supreme Court, which is the only thing this statute talks about. And that interpretation is in keeping if this court were to view the statute as ambiguous. It's in keeping with the agreement, appears on all sides, that the statute was intended to end this court's certiorari jurisdiction. And it was based on this court's recommendation to Congress that it puts the Virgin Islands Supreme Court into the same relationship with the U.S. Supreme Court as every other state court of last resort. And when Congress was enacting it, when the sponsor of the legislation went to the House floor and said what this legislation was supposed to do, it said it is supposed to put the Virgin Islands Supreme Court in the same position as any other state court of last resort with regard to the U.S. Supreme Court. There is only one thing that this court could have meant and one thing that Congress could have meant when it said that, because there is only one relationship a state Supreme Court enjoys with the U.S. Supreme Court. Why did Congress specify cases when it took away jurisdiction from Puerto Rico in the First Circuit? Why did it specify the cases commenced in the First Circuit when it removed that jurisdiction but did not specify cases commenced in the Third Circuit? Well, Your Honor, that language in the First Circuit statute is a bit different from the one we're dealing with. That specifically spoke to appeals commenced in the First Circuit and the distinction there being that the First Circuit heard appeals from the Puerto Rico Supreme Court, an appeal as a right to the First Circuit. And the context here is different because there are only three territories in which a regional court of appeals reviewed it on writ of certiorari. That's Guam, that's the Virgin Islands, and that's the Northern Mariana Islands. In the context of the Virgin Islands, this is the only instance in which Congress has repealed that certiorari jurisdiction and included a savings clause. With regard to Guam, it failed to do so and the Ninth Circuit immediately lost all jurisdiction. With regard to the Northern Mariana Islands, the 15-year period ended on its own under the original statute and the Ninth Circuit held that as of the date, that 15-year anniversary, jurisdiction was lost. So in the context of the Virgin Islands, this is the first instance in which Congress has specifically provided for a savings clause in a statute stripping jurisdiction over territorial court. And it's telling that when Congress did that for the first time, it used the exact same language the U.S. Supreme Court uses to talk about its own docket. So whenever the U.S. Supreme Court is issuing a new rule and its promulgation date that will apply prospectively on its promulgation date, it provides that it will apply to cases commenced after the date of promulgation. It does not Can you speak to the reliance point and the due process concerns it raises? Because I'm not sure that we as a court want to adopt a proposition that you don't need to treat our precedent as controlling if you hold out hope that it can be reversed. Absolutely, Your Honor. The Bar Association does not take it lightly that it's intervening and asking this court to reverse itself. It's a significant ask. And as we mentioned in our brief, we have not taken that step lightly. And it's specifically to the reliance interest. As the Respondents' Council said, the Muntiaco case resolves what will happen to those petitioners who have had their petitions granted and now will be dismissed if this court overturns Basin. They will have 90 days from the date this court dismisses to go to the U.S. Supreme Court because this court's exercising jurisdiction told the 90-day filing deadline. How do we know that's going to happen? Well, Your Honor, the Muntiaco case is similar essentially on all fours with this exact situation. You had a situation You're assuming that the Supreme Court is going to treat it that way, right? Well, I have to assume the U.S. Supreme Court will follow its own binding precedent. Well, are they going to feel bound by that? I mean, they did it once before. Is that a precedent that binds them? Do they have to say, oh yeah, we're going to do that again? Or can they say, we're not going to do that again, and those people are out of luck? Sure, Your Honor. It's always possible the U.S. Supreme Court could disagree with itself in a later case. But we have the exact situation here with the territory going from the Guam Supreme Court to the U.S. Supreme Court where a regional court of appeals But we don't have the question with respect to local law issues or territorial law issues. Those claims, they'll be out of luck. Well, they won't be out of luck, Your Honor, in that they've already been determined by the Virgin Islands Supreme Court. And going to the reliance interest, we have to talk about They will not have any further review. Companion assurance will be out of luck if we follow yours. That's absolutely correct, Your Honor. And that's exactly what Congress intended when it provided the U.S. Supreme Court would have jurisdiction only over issues of federal law. And to that point, we have to talk about reasonable reliance, not just reliance. So saying that a litigant like Companion Assurance acted in reliance on the fact that this court might grant review and then might reverse the Virgin Islands on a local issue, a local issue of local law, is like a state court litigant in state trial court saying, I'm going to make this litigation decision because the U.S. Supreme Court might grant review and then might reverse. It's not a reasonable reliance. You cannot rely on that reasonably because of the very low chance that it would ever happen. Thank you very much, Mr. Arce. Thank you, Your Honor. We'll have Mr. Russo on rebuttal. Thank you, Your Honors. I have just a few brief points on rebuttal. The first thing I'd like to start with is that the respondent has now conceded that cases commenced can't mean cases commenced in the Third Circuit. So under their definition, that must mean that cases commenced means cases commenced in the United States Supreme Court. But there are at least two very serious problems with that interpretation. As we said in our case in chief, defining cases commenced as commenced in the United States Supreme Court would create a choice of form. If litigants file in the United States Supreme Court after December 28, 2012, H.R. 6116 would apply and the United States Supreme Court would have jurisdiction. But for all other appellants who file in the Third Circuit, H.R. 6116 would not apply because Section 3 is an effective date provision. If those amendments don't apply, that means the pre-amended version of Section 6113 applies. And under that, the Third Circuit would retain jurisdiction. And furthermore, that's so in our case. Our case was never filed in the United States Supreme Court. So even by respondent's own admission, this court would have jurisdiction under the pre-amended version of Section 6113 in this case. Secondly, Your Honors, both the respondent and the Bar Association have repeatedly suggested, and it's been a topic of questioning extensively this morning, that under our reading of Section 3, this court could indefinitely retain certiorari jurisdiction over the Virgin Islands Supreme Court. This argument betrays a fundamental misunderstanding of both our position and the statutory scheme. Under our position, the amendments stricter to this court of jurisdiction would apply to cases commenced in the Superior Court on or after December 28, 2012. For all cases filed before that point, this court would retain jurisdiction under the pre-amended version of Section 6113. But that section does contain a clear cutoff date for this court's jurisdiction. It's 2022, or at some earlier point, once all of the cases that have been filed before December 28, 2012, work their way through the judicial system. So contrary to respondent's and amici's suggestions, this court's jurisdiction would not continue indefinitely or long after 2022 under our reading of HR 6116. But that's under your reading of the statute, and somebody else may have a different reading, and we'll be right back here in another four or five years arguing whether our jurisdiction terminated in 2022 or not. Well, Your Honor, so the respondent said that the language establishing that this court's jurisdiction would end in 2022 has been repealed by HR 6116. But if you look to Section 3, it clearly says the amendments in this Act repealing 1613 for cases filed after December 28, 2012, that they only apply to those cases. So for cases filed before that point, I don't think there's any fair reading of the statute under which somehow the 2022 provision in Section 1613 somehow disappears. If your case is filed before December 28, 2012, the pre-amended version of 1613 applies. And in 1613, you have a clear cutoff date for this court's jurisdiction. How does that square with the Judicial Council report and the unusual alacrity with which Congress acted upon that report in passing legislation to strip this court of jurisdiction? How can the analysis you've provided be consistent with those historical facts? Your Honor, I know Judge McKee had a question about this as well, so I'm happy to address it. We certainly think the court can consider its own report to Congress, and it's important to look at it. But we still believe that the text is the primary touchstone. The text of Section 3 is the primary touchstone for this court's analysis. And we think the text is clear that amendments… Because you believe commencement can only mean what you're suggesting it means, right? It can't mean anything except what you're saying it means. Because if it does mean something broader than the filing of the document, as you suggested, your analysis does not follow, right? We certainly think it's clear that a case is commenced when it's filed. And we think even relying on Slack, Slack makes clear that it's the filing of a case that actually results in the commencement of the case. The second prong of our argument is that if you were to apply Slack, you will have to make a choice about which appellate case commenced is the relevant one. And we think under both, you reach either a very odd or, at most, absurd result construction of the statute, Your Honors. Your Honors, ultimately we ask that you read Section 3 of H.R. 6116 in the only way that honors the plain meaning of the text, congressional intent, and analogous statutes by defining cases commenced as cases commenced in the Superior Court. Under that definition, this Court has jurisdiction in this case. Thank you, Your Honors. Thank you very much, Mr. Russo. First of all, a thank you to Ms. Cooley and Mr. Russo and Professor Braga for their efforts here today. It's always good to see students have an opportunity to present arguments in this Court and to have them do so well. I apologize for my colleague. I spend a lot of time apologizing for my colleague. But in any event, we do appreciate very much your participation. I also want to thank the Virgin Islands Bar who appeared as amicus here. Interestingly, in this situation, they really appeared as a friend of two courts, not only this one but the Supreme Court of the Virgin Islands. So we thank you all for your very helpful arguments.